IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-1243 |
| | : | |
| AN EASEMENT TO CONSTRUCT, OPERATE AND MAINTAIN A 20-INCH GAS TRANSMISSION PIPELINE ACROSS PROPERTIES IN WASHINGTON COUNTY, PENNSYLVANIA OWNED BY *et al.* | : : : : : : : | |

# **MEMORANDUM**

**KEARNEY, J.**                                                                                                            **April 13, 2017**

      The Natural Gas Act requires we award just compensation to landowners for the loss of their property rights when we condemn land for gas lines approved by the Federal Energy Regulatory Commission. We measure just compensation based on established appraisal standards including the difference in market value of the land before and after the taking. Courts will look to comparable sales when available. If not available and if reviewing a commercial property, courts have evaluated just compensation in terms of lost income to the landowner due to the taking. Today, we evaluate the gas company's valuation of just compensation based on comparable sales as opposed to the landowners relying entirely upon lost income even though we can review comparable sales. We decline to depart from established standards and find the comparable sales appraisal is proper when there are comparable sales. As the landowners do not adduce contrary evidence of comparable sales, we grant the gas

company's motion for summary judgment and award the uncontested just compensation defined by comparable sales.

I.      Facts[1]

Upon consent, Columbia Gas Transmission, LLC ("Columbia") condemned a small part of landowners William E. Griffith, Jr. and Pamela M. Griffith's property. The issue is now the issue of just compensation.

Columbia is an interstate natural gas pipeline company subject to the Federal Energy Regulatory Commission (the "Commission") under the Natural Gas Act.[2] Columbia's Line 1570 is a natural gas main line serving the Pittsburgh area.[3] Columbia obtained a certificate from the Commission to replace 34 miles of pipeline on Line 1570 with approximately 37.5 miles of new material.[4] After failed attempts to reach an agreement with different landowners for access to their properties to complete the project, Columbia filed this condemnation action on August 17, 2016 under the Natural Gas Act to condemn certain easements necessary to replace the pipeline.[5]

The Griffiths own approximately two parcels of land totaling 7.7 acres in Washington County, Pennsylvania.[6] There is an existing pipeline and easement on the Griffiths' property since 1946.[7] Columbia condemned an additional 0.29 acres of permanent easement and an additional temporary easement totaling 0.37 acres over the Griffiths' two parcels.[8] Columbia and the Griffiths entered into a stipulation agreeing to Columbia's access to the Griffiths' property, leaving open the issue of just compensation owed to the Griffiths for the easements condemned.[9]

Columbia moves for summary judgment on the amount of just compensation, arguing the Griffiths cannot meet their burden of proving just compensation because the valuation method used by their expert to calculate just compensation is incorrect. Columbia Gas argues the Griffiths are entitled to nominal damages or just compensation in the amount of $43,000 as determined by Columbia's expert, William Rielly.

II.     Analysis[10]

The Supreme Court defines just compensation as "the fair market value of the property on the date of the taking."[11] "It is the landowner's burden to prove, by a preponderance of the evidence, what amount constitutes just compensation."[12] Federal law, not state law, applies to the determination of just compensation in condemnation actions under eminent domain.[13] A landowner satisfies his burden by "producing competent expert testimony as to the land's value before and after the taking."[14] In partial takings, as in this case, "just compensation is measured by the difference between the market value of the entire holding immediately before the taking and the remaining market value immediately thereafter of the portion of property rights not taken."[15]

The Griffiths rely upon an "income approach" to valuation and Mrs. Griffith's lay opinion on the fair market value of the property. Columbia argues the correct valuation is the diminution in the fair market value of the property measured by comparing the fair market value before and after the taking. We agree. The Griffiths' experts cannot rely on the income approach as a matter of law and Mrs. Griffith's lay testimony raises no genuine issue of material fact. We grant summary judgment to Columbia regarding the just compensation owed to the Griffiths.

A. **The Griffiths lack competent evidence on just compensation based only on an income approach.**

The Griffiths offer the expert testimony of Steven Victor and Mr. Griffiths, both of whom offer a valuation based on the "income approach."[16] The "income approach" or "income capitalization approach" "involves analyzing the property's capacity to generate future benefits and capitalizing the income to indicate present value."[17] While courts have allowed the income capitalization approach to estimate fair market value, the comparable sales approach is preferred. For example, the Court of Appeals for the Eighth Circuit applies comparable sales to best

determine market value.[18] Courts in our Circuit similarly find the comparable sales approach to before/after valuation is best.[19] We allow an income approach when no comparable sales are available.[20] While this income method is permissible, "comparable sales are the best evidence of the value of condemned land . . .. The income capitalization method is justified mainly when better evidence is not available. Great care must be taken, or such valuations can reach wonderland proportions."[21] Courts in this Circuit hold "the income capitalization approach may be appropriate to determine market value" when "evidence of comparable sales is unavailable."[22] When evidence of comparable sales is available, courts in this Circuit hold "[t]here is no need to look further."[23]

The income capitalization method is also inappropriate "when the extent of the future use or demand for it is speculative."[24] "Mere physical adaptability to a given use is not enough to invoke the capitalization method; the landowner must show that an income producing market existed at the date of the taking or will exist in the reasonably near future."[25] In *United States v. 75.13 Acres of Land*, the landowners had not developed their properties at the time of the takings, and only discussed proposed uses.[26] The Court of Appeals for the Eighth Circuit held "[t]he landowners failed to establish with sufficient certainty what would be the demand for their proposed uses and what income would be generated,"[27] and finding the district court did not err in refusing to instruct the condemnation commission to use the income capitalization method.[28]

While courts have held the comparable sales method is the best approach for determining fair market value, each case must be considered in light of its own facts.[29] There is no rule holding if comparable sales exist, the income approach should not be considered.[30] "In fact, even when comparable sales are available, if they are not 'comparable' enough, the income approach can be better."[31] Courts have held the determination of value for purposes of just compensation

cannot be reduced to an "inexorable rule."[32] Although some courts have adopted this flexible view, courts in our Circuit prefer the comparable sales approach when comparable sales are available.[33]

Here, evidence of comparable sales is available. Columbia's expert William Rielly obtained the diminution in fair market value before and after the taking based on comparable sales.[34] The Griffiths also admit they had an appraiser perform a similar analysis in September 2016.[35] The value from Columbia's appraiser is also only $3,000 more than the value from the Griffiths' appraiser.[36] Columbia's appraisers determined the property's highest and best use is its current use as a commercial lot with an office building.[37] The appraiser used a comparable sales approach, as well as an income capitalization approach, to determine the diminution in value after the taking is $38,000.[38] The appraiser also valued the temporary easements by applying a reasonable annual rate of return and estimating market rent for the impacted land.[39] The appraiser valued the temporary easement at $5,000.[40]

The Griffiths cite a number of cases to argue courts have accepted income analyses in condemnation cases. These cases are distinguishable. In *United States v. 275.81 Acres of Land* involving the Shanksville property uniquely tied to United Airlines Flight 93 crash on September 11, 2001, this court held just compensation correctly required the income approach.[41] The Government sought to condemn the property to build a Flight 93 National Memorial.[42] In this most unique context, this court found "the crash of Flight 93 on September 11, 2001, undeniably imbued the subject property with a national significance and intrinsic value that is neither transferable nor comparable to otherwise similar parcels."[43] "Faced with this unique valuation scenario, the Commission fairly and admirably analyzed and weighed the record evidence and correctly applied the relevant law to determine just compensation in this case."[44]

5

The Griffiths' property is not so unique, as demonstrated by the "hundreds" of comparable sales Mr. Griffith admitted in his deposition are available.[45] Because *275.81 Acres* concerned an unusual property with no available comparable sales, the district court allowed the income approach. Where, as here, comparable sales are available, we apply the comparable sales method.

Unlike the Griffiths' property, in *United States v. Certain Interests in Property in Cumberland County, N.C.*, the condemned property already contained construction and improvements.[46] The condemned property consisted of "2000 family housing units, a shopping center composed of eight stores, seven related service buildings, ten miles of paved highways, electric street lights, and complete water, sewer and electronic service."[47] The Court of Appeals for the Fourth Circuit found the condemned property in effect "is a self-contained city for about 6000 persons."[48] The Court accepted the income approach to determine the remaining economic life in the property.[49]

While the Griffiths' property contains an office building,[50] their income approach concerns development not yet undertaken. This difference distinguishes the Griffiths' property from the property in *Certain Interests in Property in Cumberland County*. The income approach may be appropriate in some cases, but not when the future use or demand for the property is speculative.[51]

While Columbia argues the Griffiths' income approach analysis is based on speculation and potential hypothetical developments of future business, the Griffiths argue their plans are concrete. The Griffiths claim they have demonstrated evidence of concrete plans to develop the remaining part of their investment property – they have contracted with an engineering firm to pave the lot and create preliminary plans for construction.[52] Since 2014, the Griffiths have been

6

researching possible development scenarios, met with contractors, solicited quotes, and interviewed architects.[53] Columbia disagrees, arguing these plans were later proved not feasible and no other definite plans exist.[54] Even if the Griffiths' plans are not speculative, they still cannot overcome the fact there are comparable sales available, and we require the comparable sales approach.

The Griffiths also argue Columbia mischaracterized Mr. Victor's expert testimony. They claim Mr. Victor presents evidence on the possible land development before and after the taking.[55] This evidence is still secondary to the comparable sales approach. Because comparable sales are available, the Griffiths could only overcome summary judgment by a comparable sale method.

We find the Griffiths' experts, Mr. Victor and Mr. Griffith, cannot testify using the income approach or any other method besides the comparable sales approach because comparable sales are available. Because they cannot present competent testimony, these experts raise no genuine issue of material fact.

**B. Mr. and Mrs. Griffith cannot testify as expert or lay witnesses on a comparable sales approach.**

Our Court of Appeals instructs "[t]he Federal Rules of Evidence generally permit landowners to give opinion evidence as to the value of their land due to the special knowledge of property which is presumed to arise out of ownership."[56] Landowners are qualified to testify as either experts under Rule 702 or lay witnesses under Rule 701.[57] By virtue of being the landowners, Mr. and Mrs. Griffith are qualified to testify as experts and lay witnesses as to the fair market value of the land. Columbia seeks to prevent Mr. Griffith from testifying as an expert, and Mrs. Griffith from testifying as a lay witness.

7

Columbia argues Mr. Griffith admitted he seeks to testify as an expert, not a lay witness.[58] Columbia claims if we exclude his testimony as an expert, we should not permit him to present the same evidence as a lay witness.[59] We agree. Mr. Griffith cannot testify as an expert using the income approach because comparable sales are available. While the Griffiths disclosed Mr. Griffith as a lay witness in their Rule 26 initial disclosures,[60] this disclosure did not provide the substance and basis of his opinion required by our Trial Management Order.[61] Mr. Griffith's expert disclosure focused only on the income approach.[62] It did not proffer any conclusions relating to comparable sales.[63] Mr. Griffith also did not proffer testimony in his deposition relating to comparable sales.[64] While he answered questions about an appraisal he had performed using comparable sales in April 2016, he claimed this appraisal was "preliminary" and made before the Griffiths determined the loss in square footage from the easement.[65] Mr. Griffith did not proffer an opinion on the value based on comparable sales after determining the loss in square footage from the easement. Mr. Griffith cannot now offer any expert or lay opinion on the value of the land based on comparable sales.

Columbia seeks to exclude Mrs. Griffith's lay testimony because "she admitted that she has no opinion of the fair market value of the property."[66] We agree Mrs. Griffith's lay testimony raises no genuine issue of material fact. While the Griffiths disclosed Mrs. Griffith as a lay witness in their Rule 26 initial disclosures,[67] this disclosure did not provide the substance and basis of her opinion required by our Trial Management Order.[68] Mrs. Griffith admitted in her deposition she has no opinion on the diminution in fair market value of the condemned property before and after the easement.[69] The Griffiths made no expert disclosures for Mrs. Griffith. Because Mrs. Griffith has no opinion to offer on the fair market value of the land, her testimony creates no genuine issue of material fact.

8

### C. Columbia's comparable sales valuation is not contested.

Columbia argues "[a]lthough [it] has no burden to prove just compensation, it has no objection to the Court awarding . . . the just compensation as determined by Columbia's expert witness, a certified appraiser[.]"[70] Columbia's appraisers followed the "well-established methodology" to determine the diminution in market value of the landowners' properties resulting from the taking.[71] After determining the value before and after the taking, Columbia's appraisers found the Griffiths are entitled to $43,000.[72]

We grant summary judgment in similar condemnation actions where the condemnor provided expert testimony on diminution in fair market value, and the landowners' evidence did not raise genuine issues of material fact. In these cases, the court accepted the condemnor's expert's conclusions as to the amount of just compensation when awarding just compensation to the landowners.[73]

Columbia offered a $43,000 appraisal based on comparable sales to the Griffiths' property. This comparable sale appraisal is unchallenged. The Griffiths have not provided a counter-appraisal based on comparable sales. They choose instead to maintain the income approach is the appropriate method.

### III. Conclusion

We find as a matter of law the Griffiths' experts cannot testify using the income approach, and Mr. Griffith can provide no expert opinion on the diminution in fair market value based on comparable sales. Mrs. Griffith has no opinion on the diminution in fair market value based on comparable sales. Because there is no genuine issue of material fact to submit to a jury, we grant summary judgment to Columbia.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Columbia filed its SUMF and appendix at ECF Doc. Nos. 140, 142). The Griffiths responded to Columbia's SUMF, added a counterstatement of facts, and a supplemental appendix at ECF Doc. Nos. 190, 191. References to exhibits in the appendices shall be referred to by Bates number.

[2] 15 U.S.C. §§ 717-717z.

[3] SUMF at ¶ 10.

[4] *Id.* at ¶ 11.

[5] *Id.* at ¶ 12.

[6] *Id.* at ¶ 3.

[7] *Id.* at ¶ 4.

[8] *Id.* at ¶¶ 6-8.

[9] ECF Doc. No. 108.

[10] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[11] *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 756 (6th Cir. 2016) (citing *United States v. Miller*, 317 U.S. 369, 373-374 (1943)).

[12] *United States ex rel. Tenn. Valley Auth.*, 821 F.3d at 756 (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273-274 (1943)); *Columbia Gas Transmission, LLC v. 101 Acres and 41, 342 Sq. Ft. More or Less in Heidelberg Twp., York Cnty.* No. 13-785, 2016 WL 6248071 at *4 (M.D. Pa. Oct. 26, 2016) (citing *Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres and Temporary Easements for 5.4130 Acres in Shohola Twp., Pike Cnty.,* No. 11-028, 2014 WL 690700 at *11 (M.D. Pa. Feb. 24, 2014)).

[13] *Tennessee Gas Pipeline Co.*, 2014 WL 690700 at * 9 (collecting cases). The Griffiths do not dispute application of federal law to the determination of just compensation.

[14] *Id.* at *11 (quoting *Millennium Pipeline Co. v. Certain Permanent and Temporary Easements in Thayer Rd.*, 919 F.Supp.2d 297, 299 (W.D. N.Y. 2013).

[15] *Tennessee Gas Pipeline Co.*, 2014 WL 690700 at * 11 (quoting *United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 n.3 (3d Cir. 1990)).

[16] Mr. Victor performed a Land Development Feasibility Study. (Appendix 226-264).

[17] *United States v. 275.81 Acres of Land*, No. 09-233, 2013 WL 989956, at *9, n.10 (W.D.Pa. Mar. 13, 2013).

[18] *United States v. 47.14 Acres of Land*, 674 F.2d 722, 725 (8th Cir. 1982).

[19] *See United States v. 275.81 Acres of Land, More or Less, Situated in Stonycreek Twp.*, No. 09-233, 2014 WL 1248205 at *7 (W.D. Pa. Mar. 26, 2014). The Court stated:

> "[A]lthough evidence of comparable sales normally offers the best evidence of fair market value, the law is not wedded to any particular formula or any particular method for determining fair market value as the measure of just compensation. When evidence of comparable sales is unavailable, other methods of valuation such as the income capitalization approach may be appropriate to determine market value."

*Id.*

[20] *47.14 Acres of Land*, 674 F.2d at 725-26; *275.81 Acres of Land*, 2014 WL 1248205 at *7.

[21] *47.14 Acres of Land*, 674 F.2d at 726.

[22] *275.81 Acres of Land*, 2014 WL 1248205 at *7.

[23] *United States v. 13.98 Acres*, 702 F. Supp. 1113, 1123, n. 28 (D. Del. 1988).

[24] *United States v. 75.13 Acres of Land*, 693 F.2d 813, 816 (8th Cir. 1982). *See also United States v. 25.202 Acres of Land*, 860 F. Supp. 2d 165, 176 (N.D.N.Y. 2009) (income capitalization method of future income should not be used when the future use or demand for that use is speculative).

[25] *75.13 Acres of Land*, 693 F.2d at 816.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *United States v. 8.34 Acres of Land, more or less, situation in Ascension Parish, La.,* No. 04-5, 2006 WL 6860387 at *7 (M.D. La. June 12, 2006).

[30] *Id.*

[31] *Id.*

[32] *United States v. 329.73 Acres of Land, Situated in Grenada and Yalobusha Counties, State of Miss.,* 666 F.2d 281, 283 (5th Cir. 1982) (citing *United States v. Toronto, Hamilton and Buffalo Navigation Co.,* 338 U.S. 396, 402 (1949)).

[33] *275.81 Acres of Land*, 2014 WL 1248205 at *7-8; *13.98 Acres*, 702 F. Supp. at 1123, n. 28.

[34] ECF Doc. No. 139, at p. 17.

[35] *Id.* at p. 13.

[36] *Id.* at p. 16.

[37] ECF Doc. No. 139, at p. 18.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] 2014 WL 1248205 at *7.

[42] *Id.*

[43] *Id.* at *7.

[44] *Id.*

[45] ECF Doc. No. 215, at p. 8.

[46] 296 F.2d 264, 266 (4th Cir. 1961).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] ECF Doc. No. 191, at p. 2.

[51] *75.13 Acres of Land*, 693 F.2d at 816; *25.202 Acres of Land*, 860 F. Supp. 2d at 176.

[52] ECF Doc. No. 191-8, at pp. 21-22.

[53] ECF Doc. No. 191, at p. 4.

[54] ECF Doc. No. 215, at pp. 4-5.

[55] ECF Doc. No. 191, at pp. 11-12.

[56] *U.S. v. 68.94 Acres of Land, More or Less, Situate in Kent County, State of Del.*, 918 F.2d 389, 397 (3d Cir. 1990).

[57] *Id.*; *U.S. v. Cardaci*, No. 12-5402, 2015 WL 4756605 at *7 (D.N.J. Aug. 11, 2015).

[58] ECF Doc. No. 215, at pp. 8-9.

[59] *Id.* at p. 9.

[60] ECF Doc. No. 191-6, at p. 3.

[61] ECF Doc. No. 56.

[62] ECF Doc. No. 142, at pp. 36-56.

[63] *Id.*

[64] *Id.* at pp. 157-202. In answer to the question "[h]ow many comparable sales did you rely on in your expert report?," Mr. Griffith responded "[n]one because as I said before, the [comparable sales] approach is most appropriate for owner user property like a house. The income approach is

most directly applicable to an income property[.]" *Id.* at p. 163. When Columbia asked Mr. Griffith about comparable sales in his deposition, he claimed they were "irrelevant." *Id.* at p. 196.

[65] *Id.* at p.198.

[66] ECF Doc. No. 215, at p. 8.

[67] ECF Doc. No. 191-6, at p. 3.

[68] ECF Doc. No. 56.

[69] ECF Doc. No. 143, at p. 208.

[70] *Id.* at p. 17

[71] *Id.*

[72] *Id.*

[73] *See Hardy Storage*, 2009 WL 900157 at *4; *Millennium Pipeline,* 919 F. Supp. 2d at 302; *Rockies Express Pipeline, LLC v. Burtle*, 492 F. App'x. 666, 671 (7th Cir. 2012).